The next case, number 23-1819, United States v. Kevin Millette. At this time, would Counsel for Appellant Millette please introduce himself on the record to begin? Good morning, Your Honors. My name is Ed McCall. I'm Counsel for Kevin Millette. With the Court's permission, I'd like to reserve two minutes for rebuttal. Thank you, Your Honors. The Court has struggled with a number of cases addressing restrictions on association with minors, and in particular, in the context of restrictions that include or are targeted at a defendant's own children. And this case presents an interesting opportunity to explore that problem after there's been a finding of a violation. One of the legal issues presented, and we've addressed it at length in our brief, is whether the rule of lenity or some concept of lenity applies in interpreting a condition of supervised release. The conditions here were imposed under unusual circumstances. They were not imposed while the defendant was in the courtroom because he did receive a compassionate release reduction in sentence, and additional conditions that had not been discussed were imposed as part of his compassionate release reduction. He had a blanket prohibition against association with minors, and then additionally, any kind of communication with minors except in the presence of an approved supervisor. And Mr. Millette at the time had two minor children, and his approved supervisor initially had three. But initially, his approved supervisor was his mother, the grandmother of his children. There's no question she was at the home at the time of all of his contact or interaction with minors alleged in the petition to revoke his supervised release. With respect to the first allegation, the judge did not find was a violation. There was a second minor present, also a relative, not his children. The government contended Mr. Millette needed separate approval for that minor to be there. The judge said that's not a violation. With respect to Mr. Millette being in separate beds in his bedroom with the supervisor in the next room, the judge said that's a violation. We contended and do contend that the judge was mistaken in making that finding. The supervisor was present, as most of us would use the term present in talking about whether our kids could go to a sleepover at somebody else's house. Is the parent going to be present? The answer would be yes. We would not necessarily expect them to continuously be in the same room. We would expect them to be at home. Counsel, there's an issue that's underlying this issue. And this was that Mr. Millette, when he was confronted with all this, he lied initially. Doesn't that also go into the court's analysis? Because it's different if I have, and again, I revoke supervised release terms many, many times or didn't revoke them other times. But to me, it's very different as a district judge. If somebody says, judge, yes, I did this. Yes, this young woman was in the room, separate bed. The supervisor was in the room next door. They knew about it. If it was an error, I apologize. It will not happen before. Maybe it would have gone remote, but here there were lies. And then at the moment of truth, that's when it comes out. So doesn't that compound your client's situation? We can't just simply see it in a vacuum. No, I appreciate the question, Judge Helpe. And it's a good question. And I didn't represent Kevin in the underlying case, representative modification proceedings. But now I've spent a lot of time getting to know Kevin. And understanding, I mean, Kevin plainly is a minor attracted person. That's the phrase the sociologists in my family say to use. Pardon me? Minor attracted person. He has a fetish for minors. He does. And he was, as the record shows, he was a victim of a misrepresentation. He didn't respectfully, Your Honor. He misrepresented what the sleeping arrangement was when he was asked what the sleeping arrangement was. And immediately upon being asked at some level, he understood, oh, she's not going to like the answer. The answer, we slept in the same room, but in separate beds. Officer Phillips is not going to like that answer. So he falsely claimed he slept on a couch. But he did promptly correct it. Now. Well, that's after someone contradicted what his version of events were. His mom said that she, in fact, was not in the room. His mom had told Officer Phillips she was not in the room. Officer Phillips confronted him. Your mom says you were sleeping in the same room. He said, I'm sorry. Yes, that's right. I did. So he so he did promptly. He does it when mom comes with a different, you know, scenario. Otherwise, he would just I didn't do anything. You know, that's that's I think that's something that that's really troubles the court. And again, it would have troubled me, probably any other judge. And I get that it's troubling, Judge. And I tried to understand in working with the Millett family, you know, what goes on here and why? Why doesn't Kevin have a natural instinct for candor? And the reason or a reason I bring up he's a minor retracted person is they don't have an instinct for candor generally. Pardon me? It isn't helpful. That's correct, Your Honor. It's a couple with the prior allegations that the that were later retracted, but they were made. And if you're telling me that he's a minor attracted person, he would seemingly have more of a need for the supervised presence of his mom. And we're not contending that there shouldn't be a requirement for the supervisor to be present. We're simply saying that everybody involved, all three supervisors and Kevin believed that the requirement for presence was satisfied as long as they were home. Is that I'm struggling a little with that definition. I mean, you get a birthday present from your mother and you're sitting in the kitchen and your mother's upstairs. You open it up. Did you open it in the presence of your mother? I think not. I'm not following why it wasn't fairly obvious to him as implied by his answer that he had to be when he was with a minor, he had to be in the presence of a supervisor in the sense that the supervisor could ascertain whether he was doing anything he shouldn't be For example, your honor. This court in the Mercado case said this condition combined with additional conditions would allow the defendant to live with live with his children. Now, if they had a presence requirement there, if the requirement to be present in that context means a second adult must always be in the same room as the defendant and his own child, then presence in that context can't mean the same thing as did your mother watch you open the birthday present. It must have a broader remit. And that's a reasonable understanding of the word. We simply contend that under the rule of lenity and also given the due process concerns of an ambiguous restriction that relates to your to perform your duty as a parent. We also, of course, your honor, contend that the district court erred. It acknowledged the condition was ambiguous and then reimposed the same condition as a continuing condition of supervised release under the new term. And that effectively has eliminated Mr. Millett and his daughter's relationship, which we respectfully submit is a serious mistake. The federal government and the probation office is wading very deeply into areas it's not expert in. And we respectfully submit that the district court was obligated to clarify what it acknowledged was an ambiguous condition. That motion is pending. It is pending. It was filed in January. We've had a conference on it, but no hearing. So we respectfully submit that if the court would agree with us that it was error to impose an ambiguous condition, we could make some progress. Because right now, the way it's worked, Mr. Millett is allowed only to have contact with his daughter who wants contact. She's a very mature 16 year old who and goes to school. She wants contact. He wants contact. They're now restricted to contact with the grandmother only in restaurants. It's very difficult for her upbringing. We think it's a serious mistake. Thank you, your honor. Thank you. Thank you, counsel. At this time, counsel for the appellee, please introduce himself on the record. Good morning, your honors. Brian Klein, board on behalf of the United States. The court, your honors, the district court reasonably concluded that Mr. Millett in sleeping in the same bedroom with his 15 year old daughter violated the condition of supervised release that unsupervised contact with minors. The district court's finding was a reasonable interpretation of the condition. As the court said, no contact with minors means no minors sleeping in your room. There are three reasons why the court's finding was reasonable. One, it comports with the plain language of the condition. And as the court noted, with common sense. Number two, it's consistent with the objectives of supervised release, including importantly, in this case, protection of the public from further crimes by the defendant. And number three. Presence mean for every moment they're together, there has to be a present adult. Your honor, this court and almost every other court that has reviewed this condition has said that it doesn't mean fleeting, unintentional associations with minors. In approving of the constitutionality of this condition, it is recognized that there could be fleeting, unintentional association with minors. That is not what we have in this case. This is on the complete other end of the spectrum. This is intentional, prolonged contact with a minor. Um, to the extent that the court, the district court was very clear that this con conduct was a violation within the heartland was not really debatable. Um, in sort of obiter dicta, the court recognized that there could be some ambiguities. The court said in the outer recesses of the condition, those are not presented by this case. And I don't think again, when the court says there could be ambiguities, it's not an ambiguity as to what actually happened. That's correct. They slept in room. That's correct, your honor. And because if let's assume they were in, you know, let's, let's assume they're in the living room and they're watching TV and the, the, the grandmother, all of a sudden the doorbell rings and it's a Amazon packages coming in and she's out for three minutes and she's back. I wouldn't do it, but this is a prolonged situation that the daughter should have gone with the grandmother or he should have gone somewhere else. That's correct. That's correct. Um, and, uh, and the, the, the third factor, um, your honors is that the court rightly found it significant, uh, that Mr. Mallette lied about what happened, um, demonstrating that, uh, he understood the conduct, uh, to be a violation of the rule. And on that point, your honors, I would cite the court to, uh, the appendix, uh, at page 50, uh, which is the testimony by officer Phillips that, um, Mr. Mallette initially claimed that he slept on the couch while his, uh, minor daughter, uh, was in the bedroom. Uh, but after being confronted with what his mother had, uh, candidly said is that they slept in the same room, uh, Malette then acknowledged that he, uh, had lied to officer Phillips initially and admitted that his daughter slept in the bedroom with him, uh, the previous night and on, uh, the records, uh, shows on previous occasions as well. Uh, notably Malette did not claim, uh, that he was confused about the parameters of the rule or that he believed that this arrangement was, uh, permitted. Um, instead, I think it's very telling that he lied, um, and demonstrated a consciousness. Let me ask from the U.S. attorney's office perspective, which I assume would be similar to a probation officer. And they admit it right away. Yes, we slept in the same room, separate beds. I assume probably your, your office would have said, well, that shouldn't happen anymore. But judge, it's been notified. If it doesn't happen again, we're not going to move for revocation. Whereas if you, to me, the more serious, uh, you know, event is the lie and then, oh, well, I cats out of the bag. Yes, I did that with, you know, the government wouldn't in all circumstances ask for revocation, maybe clarification or admonish the defendant, but this is what happened. You had a lie plus the conduct, right? It's it's yes. You're a judge helping. It's possible that if this had played out differently, it may not even be here. Yeah. Although I would say that this, this particular, this type of conduct, um, it would be hard to be, um, ignored. I think again, because it fits within the heartland of, of what the condition is trying to prohibit, particularly what we've heard from opposing counsel today for a defendant who, um, has a, a, a fetish, uh, for minors. Um, but I take your point that, that, um, the defendants, uh, conduct and, and what he, he tells the probation officer, um, certainly is, is, is very relevant to, to how they proceed. Many times these situations, if told to probation officer, the probation officer will say, well, I'm going to inform the court with a recommendation that no action be taken, but if it does happen again, or let's modify the conditions, but here with the line, there's probably almost no room for leeway. Yes. Uh, I think, I think that's right. Your honor. I think the, the, the, the lie was, was as judge Torres and, uh, said in her ruling was quite significant to her determination as, as it should have been. Um, I I'd like to, uh, just briefly talk about the, I think the standard of review before this court, as it is Before you get to the standard of review, do you see that the condition is ambiguous? I mean, because the issue, assuming it's still pending in the district court is not going to go away. What is the government's position on whether there's any ambiguity to this provision? Well, the, the, the issue is still pending before the district court. And as the government's argued in its brief, I think that because of that, and the district court still has plenary jurisdiction over the case, the district court is in the best position to tailor, uh, the, the condition if it needs to be tailored at all. Um, I, I do, I do understand the district court's point about possible ambiguities at the outer recesses, particularly when you have a defendant, uh, who has a family relationship as Mr. Millett does. Um, we certainly recognize that, but again, the, all the courts that have addressed this issue and have ruled on the constitutionality of this kind of no contact condition have said it's constitutional because it, it doesn't disallow, um, fleeting incidental. That's, that's where maybe the ambiguities would be, but those are not, uh, something that we're concerned about under the rubric of, of this rule. And, and, and here we're talking about something that is clearly not, uh, ambiguous conduct. It was, it was planned. It was intentional. It's within the heartland of, of what this condition, um, is requires. Uh, isn't this kind of similar, just an analogy, what a district judge, there's a jury trial and we'll tell, uh, the witnesses, you will not have any contact with the jurors. And let's assume incidentally in the cafeteria down there, they happen to be in line. Hello, how are you? Versus the witness knowing the jurors over there and all of a sudden, let me sit in the same table. That's sort of the same, right? Yes. I think, I think, I think that's right. Your honor. Um, well, the Mr. Millett isn't arguing that it's the ambiguity as to the outer reachers with respect to momentary changes. I think, as I understand his argument, he's simply saying that in the presence of, if someone's in the same reasonably sized home with me, two bedroom home, then they're in my, I'm in their presence or that it's ambiguous as to that. And we should therefore construe the ambiguity in favor of him. I think that's the ambiguity he would point to. Yes, your honor. And, and there is no, there is no ambiguity there. And the, the language in the presence of has to be read, um, in the context of, of the condition and the purpose of supervised release. It has to allow the person, the person supervising him has to be aware, uh, in a position to be aware of Mr. Millett's, uh, conduct. And while there could be someone in his, in another room, uh, momentarily, uh, you know, they have to be, they have to be with the person, uh, in a on the deck like she was, and they were in the living room and say she was on the deck for an hour. Is that, is that still no presence? I mean, the concern seems to be the bedroom with the beds. I think, yes, that, that is certainly the concern here. Your honor, I think even in your hypothetical, that is not present. Um, the, the Mr. Millett's mother's um, and, and this is why it's important to understand that they need to be present and aware of the defendant's conduct. Her testimony was that she believed that the minor daughter, 15 years old, that she knew she was, she could handle herself. And if there was some issue, she could yell, uh, for help. Um, that was her testimony at the, uh, revocation hearing. Um, certainly that is not what, uh, what we're looking for. That's not what's required under the rule. Uh, the supervisor has to be present and in a position, um, to know, uh, readily, immediately if there is some inappropriate, uh, conduct happening. And that certainly can't happen when the defendant and his minor daughter are sleeping in the room together and she's out in the swimming pool. Um, as are the facts of this case. Um, I see that my time is running out. Unless the court has any further questions, I would ask the court to affirm the judgment of the district court. Thank you. Thank you. Counsel for the appellant, please reintroduce yourself on the record to begin. You have a rebuttal, two minutes. Thank you. Uh, your honors, I thank you again. This is Ed McCall from Mr. Millett. Uh, I'd just like to clarify, Judge Helpe, that we do not contend that there is association, not contact, but we, we do not dispute that he was both associating and in contact with his, uh, daughter. The question is whether he was doing that in the presence of, or whether it's ambiguous, whether he was doing that in the presence of the approved supervisor who was his mother, uh, and AM's grandmother. We respectfully contend that that ambiguity. You say about the government's argument that you have to look at the purpose for imposing this, which is you're, you have a supervisor who can protect the interests of the minor. Yes, your honor. I think we had an excellent supervisor in, in the senior Mrs. Millett, who is very close to, uh, AM and knows her well, knows the family well, knows Kevin's background, knows of course his convictions, uh, and is comfortable that the circumstance that she's approving, uh, is safe for AM. But the government's point is that they needed an adult present who could intervene if something untowardly was going on. And... Without the child having to... No, no, Mrs. Millett said, said that she was confident she would because she has confidence that AM wouldn't allow it. She also has confidence that he has no record of acting on that fetish. It's a very difficult psychological circumstance that society's going to deal with over the coming years. We've evolved in how we treat people who were attracted to different kinds of, of intimacy. And this is the kind of intimacy we can't allow. No question about that. But how do we deal with people who have an inclination towards it? Are they dangerous? What level of supervision do we need? The court, the district court made some assumptions about what it thought presence meant. And we all might make different ones because we have different levels of understanding and empathy for the Millett family circumstance. The folks in the Millett family and all of them are very comfortable with, with Kevin's relationship with all three of his kids, including the one remaining minor, AM. I think in that context, Mrs. Millett was correct that she was present, Your Honor. Thank you, Mr. McCarty. Thank you. Thank you, counsel. That concludes argument in this case.